**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OLGA KONDRACHUK,

        Plaintiff,

   v.

UNITED STATES CITIZENSHIP &
IMMIGRATION SERVICES,

        Defendant.

_____/

No. C 08-5476 CW

ORDER GRANTING
DEFENDANT'S MOTION
TO DISMISS

    Plaintiff Olga Kondrachuk seeks judicial review of Defendant United States Citizenship and Immigration Services' (USCIS) denial of her application for adjustment of status.  USCIS moves to dismiss, arguing that the Court lacks subject matter jurisdiction over the action or, in the alternative, that Plaintiff has failed to state a claim.  Plaintiff opposes the motion.  The matter was taken under submission on the papers.  Having considered all of the papers submitted by the parties, the Court concludes that it lacks subject matter jurisdiction over this action and grants USCIS's motion.

**United States District Court**
For the Northern District of California

1                            BACKGROUND

2    I.   The K Visa

3         The K-1 visa is a non-immigrant visa that allows an individual

4    who is engaged to be married to a U.S. citizen to enter the United

5    States for the purpose of concluding the marriage.  See 8 U.S.C.

6    § 1101(a)(15)(K)(i).  The child of such a fiance(e) who accompanies

7    or follows to join his or her parent may enter the United States

8    with a K-2 visa.  See 8 U.S.C. § 1101(a)(15)(K)(iii).  A child is

9    defined as an unmarried person under twenty-one years of age.  8

10   U.S.C. § 1101(b)(1).[1]  A K-1 visa holder must conclude his or her

11   marriage with the U.S. citizen within ninety days of being admitted

12   to the United States.  8 U.S.C. § 1184(d)(1).

13        Prior to the Immigration Marriage Fraud Amendments of 1986

14   (IMFA), the Immigration and Nationality Act (INA) provided that,

15   after the conclusion of the marriage, "the Attorney General shall

16   record the lawful admission for permanent residence of the alien

17   and minor children."  See Pub. L. No. 91-225, 84 Stat. 116, § 3(b)

18   (1970).  Since the repeal of the automatic adjustment provision by

19   the IMFA, K visa holders seeking permanent residence have been

20   required to apply for adjustment of status under 8 U.S.C.

21   § 1255(a).  See Pub. L. No. 99-639, 100 Stat. 3537, § 3(d) (1986).

22   This section provides that the Secretary of the Department of

23   Homeland Security may adjust an applicant's status to that of

24   lawful permanent resident if the applicant "is eligible to receive

25

26        [1]Section 1101(a)(15)(K)(iii) extends K-2 visa eligibility to
     the "minor child" of a K-1 visa holder.  The INA does not define
27   the term "minor child."  USCIS interprets the term "minor child" as
     equivalent to the term "child," which is defined as an unmarried
28   person under twenty-one years of age.

United States District Court
For the Northern District of California

1  an immigrant visa and is admissible to the United States for

2  permanent residence," and if "an immigrant visa is immediately

3  available to him at the time his application is filed."  8 U.S.C.

4  § 1255(a).  However, a K visa holder's status may only be adjusted

5  to that of conditional permanent resident.  8 U.S.C. § 1255(d).

6  This conditional status was created by the IMFA and is governed by

7  8 U.S.C. § 1186a.  It is designed to prevent an alien's improper

8  use of marriage to a U.S. citizen as a means of obtaining permanent

9  residence.  After a period of two years, the condition may be

10 removed if USCIS is persuaded that the marriage is legitimate.  8

11 U.S.C. § 1186a(c)(3)(B).

12      Section 1255(a) does not create an independent basis for an

13 applicant to obtain an immigrant visa; it merely establishes a

14 procedure (adjustment of status) by which a visa may be

15 distributed.  An alien who is already in the United States but

16 seeks adjustment of status to permanent resident must demonstrate

17 that he or she is entitled to an immigrant visa.[2]  After a K-1 visa

18 holder is married to a U.S. citizen, he or she will have no

19 difficulty making such a showing; the marriage renders him or her

20 the "immediate relative" of a citizen, and therefore "eligible to

21 receive an immigrant visa."  8 U.S.C. § 1151(b)(2)(A)(i).

22 "Immediate relatives" comprise children (including stepchildren

23 under the age of eighteen at the time of the marriage), spouses and

24 parents of U.S. citizens.  Id.  Likewise, an immigrant visa will be

25 "immediately available" to a K-1 visa holder "at the time his

26

27      [2]Individuals not present in the United States may obtain an
   immigrant visa by applying for one with the U.S. Consulate.  Once
28 they arrive, they need not adjust their status.

3

**United States District Court**
For the Northern District of California

1  application is filed" because immediate relatives of U.S. citizens,

2  unlike other categories of family-based immigrants, are not subject

3  to annual numeric limitations.  8 U.S.C. §§ 1151(b)(2)(A)(i), (c)

4  and (a).

5      In contrast, some K-2 visa holders will find themselves

6  without an independent statutory basis for adjusting their status

7  under 8 U.S.C. § 1255(a).  Because the IMFA eliminated automatic

8  adjustment of status for K-2 visa holders, they must otherwise be

9  "eligible to receive an immigrant visa" under the INA, and such a

10 visa must be available immediately.  K-2 visa holders under the age

11 of eighteen will have no difficulty satisfying these requirements

12 because the INA provides that a U.S. citizen's stepchildren who are

13 less than eighteen years old at the time of the marriage are

14 considered immediate relatives of a citizen and are entitled to an

15 immediate visa on that basis.  See 8 U.S.C. § 1101(b)(1)(B).

16 However, K-2 visa holders who are eighteen or older at the time of

17 their K-1 parent's marriage are not considered immediate relatives

18 of a U.S. citizen and are not eligible for an immediate visa.  Id.

19 This is true even though these children were given K-2 visas to

20 enter the United States with their K-1 parent when they had already

21 attained eighteen years of age.  Nor can these children obtain

22 derivative benefits from their K-1 parent's status as the spouse of

23 a U.S. citizen, because there is no statutory basis for such

24 benefits.[3]  See 8 U.S.C. § 1151(b); 8 C.F.R. § 204.2(a)(4).

25

26     [3]After the K-1 visa holder adjusts his or her status to lawful
   permanent resident, the K-2 child may apply for an immigrant visa
27 as the child of a lawful permanent resident.  However, such a visa
   would not be immediately available because this category of family-
28                                                    (continued...)

4

**United States District Court**
For the Northern District of California

1    USCIS has acknowledged that the IMFA left this unintended gap

2   in the INA with respect to the adjustment of status of K-2 visa

3   holders.   Interoffice Memorandum from Michael L. Aytes, Assoc. Dir.

4   of Domestic Ops. for USCIS, re. Adjustment of Status for K-2 Aliens

5   (Mar. 15, 2007), available at www.uscis.gov/files/pressrelease/

6   K2AdjustStatus031507.pdf (last accessed May 22, 2009).   The agency

7   filled the gap by enacting 8 C.F.R. § 214.2(k)(6)(ii), which reads:

8           Upon contracting a valid marriage to the petitioner
            within 90 days of his or her admission as a nonimmigrant
9           pursuant to a valid K-1 visa issued on or after November
            10, 1986, the K-1 beneficiary and his or her minor
10          children may apply for adjustment of status to lawful
            permanent resident under section 245 [8 U.S.C. § 1255] of
11          the Act.   Upon approval of the application the director
            shall record their lawful admission for permanent
12          residence in accordance with that section and subject to
            the conditions prescribed in section 216 of the Act.
13
    This regulation provides a basis for K-2 visa holders to obtain
14
    permanent resident status, even though the INA itself does not
15
    expressly provide that K-2 visa holders between the ages of
16
    eighteen and twenty-one are eligible for an immigrant visa.   As was
17
    the case before the IMFA, these benefits flow from the parent's
18
    status as the spouse of a U.S. citizen.
19
        The USCIS regulation furthers Congress' intent in creating the
20
    K visa to facilitate the entry and subsequent permanent residence
21
    of alien fiance(e)s and of their children as well.   See Pub. L. No.
22
    91-225.   Nothing in the legislative history of the IMFA suggests
23
    that Congress intended to eliminate the availability of permanent
24
    residence for K-2 visa holders between the ages of eighteen and
25
    twenty-one.   See H.R. Rep. No. 99-906 (1986).   Indeed, such an
26

27  ─────────────────────

28       [3](...continued)
    based immigrants is subject to annual numeric limits.

**United States District Court**
For the Northern District of California

interpretation would render the K-2 visa meaningless for these children. Congress could not have intended to authorize the admission of these young people as children of a U.S. citizen's fiance(e), only to send them back to their countries of origin when they soon and inevitably reach the age of twenty-one, because there is no basis for them to obtain an immigrant visa in the meantime. In addition, the only INA provision addressing adjustment of status for K visa holders assumes that K-2 children will be able to adjust their status along with their parents:

> The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101(a)(15)(K) of this title [establishing eligibility for a K-visa] except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant (<u>or, in the case of a minor child</u>, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101(a)(15)(K) of this title.

8 U.S.C. § 1255(d) (emphasis added).

II. Denial of Plaintiff's Application for Adjustment of Status

According to the complaint, Plaintiff was born on September 20, 1981 and is a citizen of Ukraine. She lived in Ukraine until 2002, when, at the age of twenty, she withdrew from her studies at the Kiev National Trade University and accompanied her mother to the United States. Her mother was admitted on a K-1 visa as the fiancee of a U.S. citizen; Plaintiff was admitted on a K-2 visa as her child. On September 13, 2002, Plaintiff's mother married her fiance within ninety days of her entry, as required by the terms of her visa.

On September 19, 2002, Plaintiff and her mother mailed I-485 applications to USCIS seeking to have their status adjusted to that

1  of lawful permanent resident.  The next day, Plaintiff turned

2  twenty-one.  Plaintiff's mother's application for adjustment of

3  status was later approved.  However, in a notification dated

4  December 3, 2005, USCIS denied Plaintiff's application.  USCIS

5  acknowledged 8 C.F.R. § 214.2(k)(6)(ii), which, as discussed above,

6  is the "gap-filling" regulation that provides the basis for

7  adjusting the status of K-2 visa holders between the ages of

8  eighteen and twenty-one.  USCIS nonetheless stated that Plaintiff

9  was ineligible to adjust her status because she was twenty years

10  old when her mother married, and therefore was not eligible for

11  permanent residency as the stepchild of a U.S. citizen.

12      The USCIS adjudicator's discussion of stepchildren implies the

13  adjudicator believed that, in order to be eligible for permanent

14  residency, a K-2 visa holder <u>must</u> be the stepchild of a U.S.

15  citizen.  As discussed above, however, this reasoning would require

16  the conclusion that no K-2 visa holder between the ages of eighteen

17  and twenty-one would ever be eligible for adjustment of status,

18  because individuals who are eighteen years of age or older are

19  excluded from the definition of "stepchild."  USCIS itself has

20  recognized that the adjudicators position is inconsistent with the

21  INA and the agency's "gap-filling" regulation.  The March 15, 2007

22  memorandum cited above states:

23      The purpose of this memorandum is to remind officers that
       K-2 aliens seeking to adjust status are <u>NOT</u> required to
24      demonstrate a step-parent/step-child relationship with
       the petitioner.  A K-2 alien who is over 18 years of age
25      may adjust status provided they satisfy the requirements
       for adjustment of status under Section 245 of the
26      Immigration and Nationality Act (INA).  Officers should
       follow the regulations at 8 CFR 214.2(k)(6)(ii) regarding
27      adjustment of status for K-2 aliens.

28      The Immigration and Marriage Fraud Amendments of 1986

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> created a gap regarding the procedure for a K-2 alien to
> adjust status to that of a person admitted for permanent
> residence.  The agency has filled the gap with the
> controlling regulation at 8 CFR 214.2(k)(6)(ii) . . . .
>
> . . .
>
> Officers should <u>NOT</u> limit the adjustment of status of K-2
> aliens to persons under the age of 18 based on the term
> "minor child" as it appears in 245(d).  The INA does not
> define the term "minor child."  Section 101(b)(1) defines
> the term "child" as "an unmarried person under twenty-one
> years of age."  Consequently, officers should allow for
> the adjustment of status of K-2 aliens under the age of
> 21, provided the requirements for adjustment of status in
> 245 of the INA are satisfied.

3/15/07 Mem. at 1-2 (emphasis in original).

Plaintiff challenges the decision to deny her application under § 706 the Administrative Procedure Act, which permits a court to set aside any agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced. <u>Morongo Band of Mission Indians v. Cal. State Bd. of Equalization</u>, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  <u>Stock W., Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or

8

United States District Court

For the Northern District of California

1  allege an actual lack of jurisdiction that exists despite the

2  formal sufficiency of the complaint.  <u>Thornhill Publ'g Co. v. Gen.</u>

3  <u>Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>Roberts v.</u>

4  <u>Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).  "A district court

5  may hear evidence and make findings of fact necessary to rule on

6  the subject matter jurisdiction question prior to trial, if the

7  jurisdictional facts are not intertwined with the merits."  <u>Rosales</u>

8  <u>v. United States</u>, 824 F.2d 799, 803 (9th Cir. 1987).  Under these

9  circumstances, the allegations in the complaint are not presumed to

10 be true.  <u>Id.</u>; <u>see also</u> <u>McCarthy v. United States</u>, 850 F.2d 558,

11 560 (9th Cir. 1988) (the district court "may review any evidence,

12 such as affidavits and testimony, to resolve factual disputes

13 concerning the existence of [subject matter] jurisdiction").

14                               DISCUSSION

15     USCIS argues that, under the INA, the Court lacks subject

16 matter jurisdiction to review Plaintiff's challenge to the decision

17 to deny her application for adjustment of status.  USCIS relies on

18 8 U.S.C. § 1252(a)(2)(B), which provides:

19     Notwithstanding any other provision of law (statutory or
       nonstatutory), . . . and except as provided in
20     subparagraph (D), and regardless of whether the judgment,
       decision, or action is made in removal proceedings, no
21     court shall have jurisdiction to review-- (i) any
       judgment regarding the granting of relief under section
22     . . . 1255 of this title . . . .

23 8 U.S.C. § 1252(a)(2)(B).  As noted above, § 1255 governs

24 adjustment of status.  Subparagraph (D) of § 1252(a)(2) provides an

25 exception to the general rule that courts lack jurisdiction to

26 review decisions concerning adjustment of status:

27     Nothing in subparagraph (B) or (C), or in any other
       provision of this chapter (other than this section) which
28     limits or eliminates judicial review, shall be construed

                                    9

**United States District Court**
For the Northern District of California

as precluding review of constitutional claims or
questions of law raised upon a petition for review filed
with an appropriate court of appeals in accordance with
this section.

8 U.S.C. § 1252(a)(2)(D).

In <u>Hassan v. Chertoff</u>, 543 F.3d 564 (9th Cir. 2008), the Ninth

Circuit considered a challenge to USCIS's denial of an application

for adjustment of status.  The court noted that "judicial review of

the denial of an adjustment of status application -- a decision

governed by 8 U.S.C. § 1255 -- is expressly precluded by 8 U.S.C.

§ 1252(a)(2)(B)(i)."  <u>Id.</u> at 566.  The court rejected the

plaintiff's argument that it had jurisdiction to review "questions

of law" concerning the denial, noting that the plaintiff's

challenge was not raised in a petition for review filed with the

Ninth Circuit itself -- as required for review under

§ 1252(a)(2)(D) -- but rather came to the Ninth Circuit on direct

appeal from the district court.

Thus, under § 1252 and <u>Hassan</u>, an individual may seek judicial

review of the denial of his or her application for adjustment of

status only if the challenge involves either "constitutional claims

or questions of law" and is raised in a petition for review filed

in the court of appeals pursuant to § 1252.  Although Plaintiff's

challenge raises an issue of law in that she asserts that USCIS

improperly determined that she was ineligible for adjustment under

the INA, her challenge must be brought in a petition for review

before the Ninth Circuit pursuant to § 1252.

Plaintiff asserts that USCIS is precluded from defending this

case because its policy of denying the I-485 applications of K-2

visa holders who have reached the age of twenty-one was found to be

10

**United States District Court**
For the Northern District of California

1  contrary to law in the case of <u>Verovkin v. Still</u>, No. C 07-3987

2  (summary judgment order available at 2007 WL 4557782).  In

3  <u>Verovkin</u>, which was also before this Court, the plaintiff

4  challenged USCIS's decision that he was not eligible for adjustment

5  of status because he turned twenty-one between the date on which he

6  submitted his I-485 application and the date on which USCIS

7  adjudicated it.  The Court held that the age requirement applied

8  only to the plaintiff's original application for a K-2 visa, and

9  thus he was not required to demonstrate that he was under twenty-

10  one years of age in connection with his application for adjustment

11  of status.  The Court entered judgment in the plaintiff's favor,

12  and the defendant did not appeal.

13      Under <u>Verovkin</u>, Plaintiff was eligible for adjustment of

14  status because she was under the age of twenty-one when she

15  received her K-2 visa.  However, even assuming that Plaintiff could

16  invoke collateral estoppel against USCIS to begin with, <u>see</u> <u>United</u>

17  <u>States v. Mendoza</u>, 464 U.S. 154 (1984) (holding that the United

18  States could not be collaterally estopped from arguing that its

19  naturalization policy was constitutional where the policy had been

20  found unconstitutional in an earlier lawsuit brought by a different

21  party), it is axiomatic that the Court cannot adjudicate a claim

22  over which it lacks subject matter jurisdiction.  USCIS did not

23  raise the issue of subject matter jurisdiction in <u>Verovkin</u> and,

24  notwithstanding Plaintiff's assertion to the contrary, the Court

25  did not examine the issue in any of its orders.  Because collateral

26  estoppel applies only to issues that were actually litigated and

27  decided in a previous action, <u>In re Magnacom Wireless, LLC</u>, 503

28  F.3d 984, 996 (9th Cir. 2007), the Court may not rely on the

**United States District Court**
For the Northern District of California

1 | doctrine to conclude that it has subject matter jurisdiction over

2 | the present case.  To the extent Plaintiff claims that USCIS waived

3 | its right to raise lack of subject matter jurisdiction as a defense

4 | in the present case because it did not raise the same defense in

5 | Verovkin, she has cited no authority in support of her position.

6 |       The Court concludes that it lacks subject matter jurisdiction

7 | over this action.

8 |                            CONCLUSION

9 |       For the foregoing reasons, Defendant's motion to dismiss

10 | (Docket No. 20) is GRANTED.  Plaintiff's motion for an order

11 | enjoining USCIS from pursuing removal proceedings against her

12 | (Docket No. 23) is DENIED; because the Court lacks subject matter

13 | jurisdiction over this case, it has no authority to enjoin the

14 | proceedings.  Plaintiff may raise the issue of USCIS's erroneous

15 | application of the law to her I-485 application in the course of

16 | the removal proceedings and, if the proceedings result in a

17 | decision that is adverse to her, she may raise the issue in a

18 | petition for review with the Ninth Circuit.

19 |       The clerk shall enter judgment and close the file.  The

20 | parties shall bear their own costs.

21 |       IT IS SO ORDERED.

22 |

23 | Dated: 6/30/09

24 |                            CLAUDIA WILKEN
                               United States District Judge

25 |

26 |

27 |

28 |

                                12